UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL BUSH,

                    Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

                Defendant.

NO.  C12-1758-JLR-JPD

REPORT AND
RECOMMENDATION

      Plaintiff Daniel Bush appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

the Commissioner's decision be AFFIRMED.

                  I.        FACTS AND PROCEDURAL HISTORY

      At the time of the most recent administrative hearing, plaintiff was a forty-seven year

old man with a high school education and a history of special education classes.

---

[1] Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

1    Administrative Record ("AR") at 805, 814, 819, 835.  His past work experience includes

2    employment as a janitor, warehouse manager, apartment manager, and landscape laborer.  AR

3    at 27, 155-62, 282-83, 302-07, 368, 806, 820-21.  Plaintiff was last gainfully employed in

4    2003.  AR at 820.

5         On January 13, 2005, plaintiff filed applications for SSI payments and DIB, alleging an

6    onset date of January 1, 2003.  AR at 14.  Plaintiff asserts that he is disabled due to bipolar

7    disorder, post-traumatic stress disorder ("PTSD"), cognitive disorder, intermittent explosive

8    disorder, polysubstance dependence, and personality disorder.  Dkt. 17 at 3.

9         The Commissioner denied plaintiff's claim initially on May 9, 2005, and on

10   reconsideration on July 11, 2005.[2]  AR at 15, 79-80.  Plaintiff requested a hearing, which took

11   place on November 8, 2007.  AR at 811-37.  On February 15, 2008, the ALJ issued a decision

12   finding plaintiff not disabled and denied benefits based on his finding that plaintiff is capable

13   of performing his past relevant work as a warehouse laborer and janitor.  AR at 67-78.

14        On April 29, 2010, the Appeals Counsel granted plaintiff's request for review, vacated

15   the ALJ's decision, and remanded this case back to the ALJ for further administrative

16   proceedings.  AR at 51-52.  Specifically, the Appeals Counsel directed the ALJ to re-evaluate

17   the opinions of two nurse practitioners pursuant to SSR 06-3p, assess plaintiff's mental

18   impairments with and without the effects of substance abuse, obtain testimony from a medical

19   expert regarding the nature and severity of plaintiff's mental impairments, and obtain

20   testimony from a vocational expert to clarify the effect of the assessed limitations on plaintiff's

21   occupational base.  AR at 53-54.

22   _____

23        [2] For reasons that are unclear, copies of plaintiff's SSI application as well as the
     decisions of the Social Security Administration ("SSA") denying plaintiff's SSI claim initially
24   and on reconsideration have not been included in the record.  AR at 5.  A handwritten note in
     the record indicates that these documents "are not available for inclusion."  AR at 5.

REPORT AND RECOMMENDATION - 2

1    On January, 24, 2011, the ALJ held a second administrative hearing where she solicited

2    testimony from a psychological medical expert, Jay Toews, Ed.D., as well as a vocational

3    expert ("VE").  AR at 759-810.  On April 19, 2011, the ALJ again issued an unfavorable

4    decision.  AR at 11-29.  Specifically, the ALJ found that although plaintiff's impairments,

5    including his substance abuse, meet listings 12.04 and 12.09, if he stopped abusing substances

6    his impairments would not meet any of the listings and he would be able to return to his past

7    relevant work, or alternatively, there would be a significant number of jobs in the national

8    economy that plaintiff could perform.  AR at 18-27.  Plaintiff's request for review of the ALJ's

9    second decision was denied on August 9, 2012, making the ALJ's ruling the "final decision" of

10   the Commissioner as that term is defined by 42 U.S.C. § 405(g).  AR at 7-10.  On October 16,

11   2012, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

12                                    II.     JURISDICTION

13   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

14   405(g) and 1383(c)(3).

15                              III.     STANDARD OF REVIEW

16   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

17   social security benefits when the ALJ's findings are based on legal error or not supported by

18   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

19   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

21   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

22   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

23   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

24   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

REPORT AND RECOMMENDATION - 3

1    whole, it may neither reweigh the evidence nor substitute its judgment for that of the

2    Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

3    susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

4    must be upheld.  *Id.*

5           The Court may direct an award of benefits where "the record has been fully developed

6    and further administrative proceedings would serve no useful purpose."  *McCartey v.*

7    *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

8    (9th Cir. 1996)).  The Court may find that this occurs when:

9           (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
            claimant's evidence; (2) there are no outstanding issues that must be resolved
10          before a determination of disability can be made; and (3) it is clear from the
            record that the ALJ would be required to find the claimant disabled if he
11          considered the claimant's evidence.

12   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

13   erroneously rejected evidence may be credited when all three elements are met).

14                              IV.    EVALUATING DISABILITY

15          As the claimant, Mr. Bush bears the burden of proving that he is disabled within the

16   meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

17   Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

18   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

19   expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

20   423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

21   of such severity that he is unable to do his previous work, and cannot, considering his age,

22   education, and work experience, engage in any other substantial gainful activity existing in the

23   national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

24   99 (9th Cir. 1999).

REPORT AND RECOMMENDATION - 4

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On April 19, 2011, the ALJ issued a decision finding the following:

1.     The claimant met the insured status requirements of the Social Security Act through September 30, 2006.

2.     The claimant has not engaged in substantial gainful activity since January 1, 2003, the alleged onset date.

3.     The claimant has the following severe impairments: a bipolar disorder with psychotic features; intermittent explosive disorder; attention deficit hyperactivity disorder (ADHD); a personality disorder; a cognitive disorder; alcohol dependence, and cannabis and cocaine abuse.

4.     The claimant's impairments, including t he substance use disorders, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1.

5.     If claimant stopped the substance abuse, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6.     If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

7.     If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: he is limited to simple, repetitive tasks; he can sustain moderate, superficial interaction with co-workers, but no work with the general public.  He should not work in higher-stress occupations, such as assembly, where performance and production quotas are demanded.

REPORT AND RECOMMENDATION - 6

8.  If the claimant stopped the substance use, the claimant would be unable (sic) to perform past relevant work.[4]

9.  The claimant was born on XXXXX, 1963 and was 39 years old on the alleged onset date. He is now 47, and is considered a younger individual age 18-49 during the entire period at issue.[5]

10. The claimant has at least a high school education and is able to communicate in English.

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

12. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

13. Because the claimant would not be disabled if he stopped the substance use, the claimant's substance use disorder is a contributing factor material to the determination of disability. Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR at 17-29.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.  Did the ALJ err in evaluating the medical evidence, such as assigning the greatest weight to the medical expert's opinion that drug and alcohol abuse was material to a finding of disability?

2.  Did the ALJ err in evaluating the lay witness testimony?

3.  Did the ALJ err at steps four or five?

Dkt. 17 at 1.[6]

---

[4] The body of the ALJ's written decision actually provides that plaintiff "would be able to perform his past work as a landscape laborer and laborer" if he stopped substance use, because these occupations involve simple, repetitive tasks. AR at 27.

[5] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 7

1

VII.    DISCUSSION

2

A.    The ALJ Did Not Err in Evaluating the Medical Evidence

3

1.    Standards for Reviewing Medical Evidence

4      As a matter of law, more weight is given to a treating physician's opinion than to that

5    of a non-treating physician because a treating physician "is employed to cure and has a greater

6    opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

7    747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

8    physician's opinion, however, is not necessarily conclusive as to either a physical condition or

9    the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

10   *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

11   physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

12   contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

13   157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

14   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

15   making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

16   merely state his/her conclusions.  "He must set forth his own interpretations and explain why

17   they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

18   (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.

19   *Reddick*, 157 F.3d at 725.

20        The opinions of examining physicians are to be given more weight than non-examining

21   physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the

22

23        [6] Although plaintiff identifies "whether [the ALJ] made a proper materiality finding" as
     a separate assignment of error, the Court finds this issue inextricably intertwined with
     plaintiff's arguments regarding the ALJ's adoption of the medical expert's opinions.  The
24   Court therefore addresses this issue at the same time as Dr. Toews' opinions.

REPORT AND RECOMMENDATION - 8

1    uncontradicted opinions of examining physicians may not be rejected without clear and

2    convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

3    physician only by providing specific and legitimate reasons that are supported by the record.

4    *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

5          Opinions from non-examining medical sources are to be given less weight than treating

6    or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

7    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

8    evaluate the opinion of a non-examining source and explain the weight given to it.  Social

9    Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

10   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

11   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

12   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

13   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

14              2.    *Dr. Micek*

15         The ALJ noted that "[i]n July 2007, the claimant reported to a counselor that he was

16   doing much better with sobriety and medication.  A few months later, in October 2007, Mark

17   Micek, MD, reported that the claimant['s] bipolar disorder limited his ability to work.  That

18   report was not supported by a reference to clinical findings."  AR at 23.  The ALJ asserted that

19   "a review of the notes from Dr. Micek and other treating sources at Pike Market Clinic show

20   that the claimant was stabilized on medication and doing well.  These reports show that, when

21   the claimant is abstinent and complies with treatment, he does well and has only moderate

22   problems in social functioning, concentration, persistence, and pace."  AR at 23.

23

24

1        Although plaintiff mentions several medical opinions in his lengthy discussion of the

2  medical evidence in his opening brief, he only clearly alleges that "the ALJ committed

3  reversible error in rejecting the opinions of Drs. Micek and Parker and the [lay witness]

4  statements of Mr. Kabisch and Ms. McGrew."  Dkt. 17 at 11.  With respect to plaintiff's

5  treating physician Mark Micek, M.D, plaintiff points out that in October 2007 Dr. Micek stated

6  that plaintiff had been followed at Pike Market Medical Clinic since April 2006 and was

7  diagnosed with bipolar disorder that limited his ability to work.  Dkt. 17 at 8 (citing AR at

8  616).  Plaintiff states that Dr. Micek "attributed Mr. Bush's work limitations to his mental

9  impairment, not alcohol abuse."  *Id.*  With respect to the ALJ's evaluation of Dr. Micek's

10  opinion, plaintiff simply states that the ALJ "did not provide [specific and legitimate] reasons

11  for rejecting the opinion of Mr. Bush's treating physician, Dr. Micek."  *Id*. at 12.

12        The Commissioner responds that "plaintiff faults the ALJ's evaluation of Dr. Micek's

13  opinion, but does not identify the opinion at issue or discuss the ALJ's handling of it beyond

14  asserting she did not provide specific and legitimate reasons for allegedly rejecting it.

15  Consequently, plaintiff waives this argument."  Dkt. 18 at 12 (citing *Carmickle v. Comm'r of*

16  *Soc. Sec. Admin*., 533 F.3d 1155, 1161 n.2. (9th Cir. 2008)).  Alternatively, the Commissioner

17  argues that the ALJ properly discounted Dr. Micek's conclusory finding that plaintiff's bipolar

18  disorder limited his ability to work in October 2007 because the doctor did not specify the

19  limitations or support his opinion with clinical findings.  *Id*. at 13 (citing AR at 23, 77, 616).

20  The Commissioner asserts that an opinion that is conclusory and inconsistent with the rest of

21  the evidence is properly rejected.  *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)

22  (finding that an ALJ may reject a physician's opinion which is "brief and conclusory in form

23  with little in the way of clinical findings to support its conclusion.").

24

REPORT AND RECOMMENDATION - 10

1    In his reply brief, plaintiff attempts to flesh out his argument regarding why the ALJ

2    incorrectly rejected Dr. Micek's opinion as being conclusory and inconsistent with

3    contemporaneous records showing that plaintiff was stabilized and doing well on his

4    medication. *See* Dkt. 19 at 3-5.  Plaintiff asserts that the fact that medical records from the

5    time period covered by Dr. Micek's opinion reflect improvement does not "support a finding

6    that Mr. Bush functions well so long as he avoids alcohol, as the ALJ found.  It indicates that

7    he exhibits poor judgment, fails to take care of himself, and relapses on alcohol when he is not

8    in a structured living arrangement." *Id*. at 5.  Plaintiff then points to opinions by Dr. Parker

9    and Mr. Kabisch, which he asserts demonstrate that plaintiff continued to function poorly even

10   when he was able to remain sober. *Id*. at 5-6.  Plaintiff concludes that "this evidence supports

11   Dr. Micek's opinion that Mr. Bush's mental impairments (not his substance use) limited his

12   ability to work" and therefore the ALJ erred by rejecting "his opinion based on isolated records

13   that show temporary improvement in certain areas and do not take into account the role of

14   structured living arrangements." *Id*. at 6 (citing AR at 616).

15   As argued by the Commissioner, plaintiff has not demonstrated that the ALJ erred by

16   rejecting Dr. Micek's October 11, 2007 opinion.  Specifically, Dr. Micek's short letter provides

17   that plaintiff "has been followed at the Pike Place Market Medical Clinic for his medical care

18   since April 2006.  He has a diagnosis of bipolar disorder that limits his ability to work, and he

19   is currently taking several medications for this.  He has additional medical diagnoses that

20   include gastroesophageal reflux disease and chronic nausea." AR at 616.  Thus, Dr. Micek's

21   letter does not explain what functional limitations plaintiff has as a result of his bipolar

22   disorder, how severe his limitations are, or what clinical findings his conclusions were based

23   upon.

24

REPORT AND RECOMMENDATION - 11

The ALJ also did not err by observing that Dr. Micek's statement that plaintiff's bipolar disorder limited his ability to work "was not supported by a reference to clinical findings," and was, in fact, contrary to Dr. Micek's own treating notes as well as the notes of other treating sources at Pike Market Clinic which show that plaintiff "was stabilized on medication and doing well." AR at 23. For example, Dr. Micek noted in May, July and August 2006 that plaintiff's bipolar disorder appears "stable on his current medications" and he was "doing quite well." AR at 577, 575. In April 2007, Dr. Micek noted that plaintiff's main issue had been treating symptoms due to acid reflux, and that his medications for bipolar disorder helped stabilize his mood. AR at 567. Thus, the ALJ properly articulated specific and legitimate reasons for rejecting Dr. Micek's conclusory statement that plaintiff's bipolar disorder limits his ability to work. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (providing that contradictions between a doctor's opinions about a claimant's abilities and that doctor's clinical notes is a clear and convincing reason for not relying on the doctor's opinion).

Plaintiff offers at most, an alternative interpretation of the medical evidence in this case. As discussed above, however, the ALJ is the one responsible for resolving conflicts in the medical evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Here, the ALJ's interpretation of the medical evidence was reasonable and should not be second guessed. The ALJ did not err by rejecting Dr. Micek's October 2007 opinion.

3.     *Dr. Parker*

Robert E. Parker, Ph.D., P.C., examined plaintiff for DSHS on several occasions. Relevant to plaintiff's assignments of error, the ALJ discussed Dr. Parker's psychological

REPORT AND RECOMMENDATION - 12

1   evaluation dated August 3, 2010 in detail.  AR at 723-32.  Specifically, the ALJ summarized

2   and evaluated Dr. Parker's August 2010 opinion as follows:

> Dr. Parker diagnosed schizoaffective disorder, posttraumatic stress disorder
> ("PTSD"), polysubstance abuse in remission, and personality disorder NOS.  He
> noted a range of marked to severe social limitations.  The claimant was somewhat
> better with cognition, but overall his GAF was rated at 35, a very low level
> consistent with listing criteria.  Dr. Parker noted that the claimant had no
> limitations following simple instructions, but had marked limitations performing
> routine tasks.  That particular assessment is internally inconsistent, however,
> because simple tasks usually are routine in nature.  Dr. Parker did not discuss that
> apparent inconsistency, but he pointed out that the claimant was not reliable or
> predictable, and he was unstable in performance and attendance, could not get
> along with others and was at high risk for aggressive behavior.  He indicated that
> the claimant could not work.
>
> Dr. Parker's report is consistent with the conclusion that the claimant has
> impairments of a severity to meet the requirements of the listing of impairments.
> He indicated that the claimant was clean and sober and he opined that any relapse
> would exacerbate his symptoms but would not contribute to a disability.  This
> report is accordingly given substantial weight because it suggests that the
> claimant's condition is of a severity to meet a listing of impairments even when
> substance abuse is not considered.  However, Dr. Parker's assessment of the
> claimant['s] functioning is contradicted by the mental status testing.  The
> claimant's mental status report shows that he was unkempt and depressed, but his
> cognition was intact, he was cooperative, responsive, logical, coherent,
> personable, alert, and his speech was fine.  Those observations do not support Dr.
> Parker['s] assessment at the time of that report, as Dr. Parker noted that the
> claimant['s] functioning was good.  Further, Dr. Parker was apparently not aware
> that the claimant continued to abuse alcohol, albeit at less levels than before.

17   AR at 22.

18          Plaintiff asserts that the ALJ "made contradictory findings with respect to Dr. Parker's

19   opinion" and "it is unclear whether the ALJ intended to accept or reject Dr. Parker's opinion."

20   Dkt. 17 at 12-13 (citing AR at 22).  Specifically, plaintiff argues that to the extent that the ALJ

21   intended to reject Dr. Parker's opinion on the basis of his mental status examination findings,

22   the ALJ erred because an ALJ is not permitted to substitute their own diagnosis for that of a

23   physician or reinterpret a mental status exam.  *Id*. at 13 (citing *Tackett v. Apfel*, 180 F.3d 1094,

24   1102-03 (9th Cir. 1999).  Plaintiff further contends that the ALJ erred by finding "Dr. Parker's

REPORT AND RECOMMENDATION - 13

opinion that Mr. Bush had marked limitations in his ability to perform routine tasks inconsistent with his opinion that Mr. Bush had no limitations following simple instructions since 'simple tasks are usually routine in nature.'" *Id*. (citing AR at 22). Plaintiff states that "there is no basis in the record for this finding. It is not even supported by common sense." *Id.*

The Commissioner responds that "the ALJ properly discounted Dr. Parker's opinion because he formulated it while under the mistaken belief that Plaintiff's polysubstance dependence was in remission, and that he had not currently or recently used alcohol or other substances." Dkt. 18 at 14-15 (citing AR at 22, 725). However, "as the ALJ correctly noted, Plaintiff's medical records reveal he had continued to use alcohol." *Id*. at 15 (citing AR at 713, 742). For example, plaintiff's care provider at Evergreen Treatment Services noted that plaintiff reported drinking alcohol a couple times per week on July 7, 2010. AR at 22, 742. Consistent with this report, that provider noted on July 23, 2010 that plaintiff was "slightly intoxicated" during their meeting. AR at 741-42. The Commissioner argues that "the ALJ reasonably found Dr. Parker's opinion was compromised by his being unaware that Plaintiff continued to abuse alcohol" on a regular basis, because Dr. Parker's evaluation indicated that plaintiff denied current substance abuse and stated that he had been clean and sober since January 14, 2010. Dkt. 18 at 15 (AR at 730). The Commissioner asserts that an ALJ may reject a physician's opinion based upon reports of a claimant that are found not credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

The ALJ did not err by discrediting Dr. Parker's opinions which appeared to be based upon his belief that plaintiff was no longer abusing alcohol, because plaintiff was actually continuing to abuse alcohol on a regular basis, albeit at less levels than before. AR at 22. The Court finds no fault with the ALJ's reasoning. Indeed, as noted above, there is substantial

evidence in the record indicating that plaintiff continued to abuse alcohol several times per week around the time of Dr. Parker's assessment.  For example, Mr. Kabish's progress notes from July 2010, the month before Dr. Parker's assessment, indicate that plaintiff reported that he was drinking far less than he used to because he drank "a couple times a week."  AR at 741-42.  Plaintiff's argument that "this level of alcohol use does not undermine Dr. Parker's opinion" is unconvincing.  Dkt. 19 at 8.  The fact that plaintiff reported drinking less alcohol than in the past does not undermine the ALJ's conclusion that his continuing alcohol abuse undermined Dr. Parker's conclusions regarding his level of functioning.

Accordingly, the Court finds that plaintiff's continued alcohol abuse, of which Dr. Parker was unaware, was a legally sufficient reason for the ALJ to reject the functional limitations assessed by Dr. Parker.  Similarly, the Court agrees with the ALJ's reasoning that Dr. Parker's finding that plaintiff had no limitations following simple instructions, but marked limitations performing routine tasks, appears internally inconsistent "because simple tasks usually are routine in nature."  AR at 22.  The ALJ provided specific and legitimate reasons for rejecting Dr. Parker's opinion.

   3.   *Dr. Toews' Opinion and the ALJ's Drug and Alcohol Abuse Analysis*

       (a)   *The ALJ Relied Heavily on Dr. Toews' Opinions in Finding Drug and Alcohol Abuse Material to Disability*

Plaintiff's assignments of error all relate to the ALJ's finding that drug and alcohol abuse ("DAA") was material to a finding of disability in this case.  A claimant is not entitled to disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  Where drug or alcohol abuse are implicated in a disability proceeding, an ALJ must first conduct the five-step sequential evaluation process without separating out the impact

of alcoholism or drug addiction.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

If the ALJ does find the claimant to be disabled and there is medical evidence of the claimant's

drug addiction or alcoholism, then the ALJ must apply the sequential-evaluation process a

second time (the "DAA analysis") to determine whether plaintiff would still be disabled if he

or she stopped using drugs and alcohol.  *Id.*  "If the remaining limitations would still be

disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material

to his disability.  If the remaining limitations would not be disabling, then the claimant's

substance abuse is material and benefits must be denied."  *Parra v. Astrue*, 481 F.3d 742, 747-

48 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1535(b).  Plaintiff bears the burden of proving

that DAA is not a contributing factor material to his disability by establishing that his disability

continues to be severe even in periods of sobriety.  *Id.*

 In finding DAA material to a finding of disability, the ALJ afforded "significant

weight" to the opinions of the psychological medical expert who testified at plaintiff's second

administrative hearing.  Specifically, the ALJ adopted Dr. Toews' opinions "regarding the

nature and severity of the claimant's conditions" because "Dr. Toews is the only medical

expert who reviewed the entire record, which includes the exhibits filed after the state agency's

review.  Because he has a better foundation for his opinions than others found in the record, the

medical expert['s] views are adopted pursuant to the provisions of SSR 96-6."  AR at 20.  The

ALJ noted that "[a]fter reviewing the record, Dr. Toews stated that the claimant's impairments

were alcohol dependence, cannabis and cocaine abuse, bipolar disorder with psychotic

features, explosive disorder, ADHD, antisocial personality disorder, and a cognitive disorder."

AR at 20.  Dr. Toews noted that plaintiff had "continuous, chronic daily alcohol abuse, with a

period of sobriety in 2004-2005 that had been marked by relapses," and that plaintiff's

impairments resulted in "marked limitations" in social functioning, as well as "concentration,

persistence, and pace, shown by his history of explosive anger, distractibility, erratic behavior, limited persistence, difficulty with abstractions, and social avoidance." AR at 20. Relying heavily on Dr. Toews' testimony, the ALJ concluded that plaintiff's "mental impairments, including the substance abuse disorder, are of a severity to meet listings 12.04 and 12.09." AR at 20.

Because the ALJ found that plaintiff's combined impairments satisfied the listings, and there was medical evidence of the claimant's drug addiction or alcoholism, the ALJ conducted a DAA analysis to determine whether plaintiff would still be disabled if he abstained from DAA.  The ALJ again relied in large part upon Dr. Toews' testimony that "if the claimant was not using drugs and alcohol, his bipolar disorder would be under better control," "[h]is auditory hallucinations would disappear when clean and sober," and his mental health symptoms would improve significantly.  AR at 21-22.  The ALJ concluded that the plaintiff's drug and alcohol abuse were material to the finding of disability in this case and "if the claimant stopped the substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy."  AR at 28.  Specifically, the ALJ concluded that plaintiff could perform medium work that involved simple, repetitive tasks, and moderate and superficial interaction with co-workers as long as he did not work with the general public or in assembly-type employment.  AR at 24.

(b)   *Parties' Contentions*

Plaintiff contends that the ALJ erred because "Dr. Toews' opinion should have been given the least amount of weight."  Dkt. 17 at 16 (citing 20 C.F.R. § 404.1527 (stating that non-examining medical source opinions are entitled to the least amount of weight); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (providing that the opinion of a non-examining medical source, without more, does not constitute a specific, legitimate reason for rejecting a

treating or examining physician's opinion)).  Plaintiff asserts that "Dr. Toews's and the ALJ's evaluation of the medical evidence was overly simplistic" because "[t]hey concluded that DA was material based on a number of records indicating that Mr. Bush was doing relatively well psychologically at times when he was not drinking.  However, it is well known that correlation does not imply causation.  Mr. Bush does best when someone else is managing his life.  That includes preventing him from drinking alcohol."  *Id*. at 16-17.

The Commissioner argues that "an ALJ may give greater weight to the opinion of a non-examining expert who testifies at a hearing subject to cross-examination."  Dkt. 18 at 19 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing *Torres v. Secretary of H.H.S.*, 870 F.2d 742, 744 (1st Cir. 1989)).  Furthermore, the Commissioner argues that the ALJ "gave the greatest weight to the opinion of psychological medical expert Jay Toews, Ed.D., because he was the only medical expert who formed his opinion after reviewing the entire medical record."  *Id.* at 7 (citing AR at 20, 26, 33-37).  In addition, "as the ALJ pointed out, Dr. Toews based his opinion on substantial evidence in the record, including examination reports from care providers at Good Samaritan Behavioral Healthcare ("Good Samaritan") who treated Plaintiff . . . [at] a time when Plaintiff was clean and sober."  *Id.* (citing AR at 23, 529-47).  The Commissioner asserts that a "non-examining physician's opinion may amount to substantial evidence as long as other evidence in the record, as discussed herein, supports those findings."  *Id.* (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

(c)    <em>The ALJ Did Not Err in Evaluating Dr. Toews' Opinions or Finding Drug and Alcohol Abuse Material to a Finding of Disability</em>

The Ninth Circuit has long recognized that without more, an opinion of a non-examining medical expert does not alone constitute a specific and legitimate reason for rejecting a treating or examining physician's opinion, but it may constitute substantial evidence

1    when it is consistent with other independence evidence in the record.  *See Tonapetyan*, 242

2    F.3d at 1149; *Magallanes v. Bowen*, 881 F.2d 747, 751-53 (9th Cir. 1989).  The Ninth Circuit

3    explained in *Thomas v. Barnhart* that such "independent evidence" could be comprised of

4    "independent clinical findings *or other evidence in the record*."  278 F.3d at 957 (emphasis

5    added).  For example, in *Magallanes*, the Ninth Circuit upheld the ALJ's reliance on the

6    opinions of a non-examining, non-treating medical advisor who testified at the claimant's

7    administrative hearing over plaintiff's treating physicians:

8           Magallanes challenges the ALJ's reliance on [medical expert] Dr. Sigurdson's
            testimony to reject the opinion of her treating physicians. She points to our
9           statement that "'[a] report of a non-examining, non-treating physician should be
            discounted and is not substantial evidence when contradicted by all other
10          evidence in the record.'"  *Gallant,* 753 F.2d at 1454, *quoting Millner v.
            Schweiker,* 725 F.2d 243, 245 (4th Cir. 1984).  Here, however, Dr. Sigurdson's
11          opinion is not contradicted by *all other evidence* in the record; it is consistent with
            other evidence, particularly that contained in Dr. Auerbach's report.  Indeed, the
12          ALJ did not rely on Dr. Sigurdson's testimony *alone* to reject the opinions of
            Magallanes's treating physicians as to the onset date of her disability.
13          Furthermore, the reports of consultative physicians called in by the Secretary may
            serve as substantial evidence.  *See Allen,* 749 F.2d at 580; *cf. Richardson v.
14          Perales,* 402 U.S. 389, 402–03, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971)
            (such written reports are neither hearsay because written, nor biased and are
15          admissible). The assistance to the ALJ of such consultative physicians is obvious
            and we refuse to exclude such evidence, whether offered in writing or in person.
16          The analysis and opinion of an expert selected by the ALJ may be helpful to the
            ALJ's adjudication, and we should not impose "burdensome procedural
17          requirements that facilitate ... second-guessing [the ALJ's resolution of conflicting
            medical testimony]."  *Allen,* 749 F.2d at 580.

18   *Magallanes*, 881 F.2d at 752-53.

19          Similar to *Magallanes*, the ALJ did not err in this case by affording the "greatest

20   weight" to the testimony of Dr. Toews.[7]  The ALJ did not rely on Dr. Toews' opinions alone to

21   find that substance abuse was material to a finding of disability in this case, and Dr. Toews'

22   
    ───────────────────
23          [7] Indeed, it would strain credulity to find that the ALJ could not rely on Dr. Toews'
     opinion to help resolve the conflicting medical evidence in this case when the ALJ was ordered
24   to solicit testimony from such a medical expert by the Appeals Council.

REPORT AND RECOMMENDATION - 19

1   opinions were consistent with other independent evidence in the record.  *See Thomas*, 278 F.3d

2   at 957.  Specifically, the ALJ reasonably concluded that Dr. Toews' opinions were consistent

3   with treatment records from Good Samaritan's Felicia Hanig, ARNP, the DDS consultative

4   physicians' opinions regarding plaintiff's functional limitations and the impact of his substance

5   abuse, as well as the opinions of examining physician William J. Collins, M.D.

6           Ms. Hanig performed a psychiatric evaluation of plaintiff at the Good Samaritan

7   Behavioral Healthcare in October 2006, following several months of little to no alcohol use by

8   the plaintiff because he was living with his older sister, Karen McGrew, and her family.  AR at

9   23, 25, 544-45.  Plaintiff reported to Ms. Hanig that his history of seizures "stopped when

10  stopped drinking and restarted when he started drinking," AR at 544, and that his "main

11  concerns are staying sober and finding housing.  He still has some mood swings, racing

12  thoughts 'here and there,' and moderate depression."  AR at 544.  However, on a scale of 0 to

13  10, he rated his "depression as 0 now but reaches 5 'at times,' anxiety as 3 now but can reach 5

14  or 6, and anger as 0."  AR at 545.  Similarly, in December 2006, plaintiff reported to Nurse

15  Hanig that his depression could be rated as a one, and his anxiety and anger were both zero.

16  AR at 534.  In January 2007, while plaintiff was still living with his sister, he reported that he

17  was not depressed anymore, not very anxious, his mood was "staying pretty good," and "even

18  though once in awhile I want a drink I am staying clean and sober.  I am doing ok on my

19  meds."  AR at 529.  His treatment at Good Samaritan ended that month because plaintiff had

20  achieved all of his treatment goals.  AR at 74, 529.[8]  The ALJ found that "Ms. Hanig's report is

21  taken into account and shows that at a time when the claimant was remaining sober [in October

22

23           ───────────────────
         [8] The ALJ noted the fact that plaintiff's treatment at Good Samaritan terminated in
24  January 2007 in her February 2008 decision, which she incorporated by reference in her April
    2011 decision.  AR at 18.

REPORT AND RECOMMENDATION - 20

1    2006], he was functioning well," and the Court finds the ALJ's conclusion to be supported by

2    Ms. Hanig's treatment records.  AR at 25.

3        The ALJ also noted that the non-examining state agency psychologists "concluded that

4    his mental impairments imposed some limitations in functioning, but not to the level of listing

5    level criteria."  AR at 20.  However, the physicians assessed similar functional limitations to

6    those assessed by Dr. Toews, such as a limitation to simple tasks and limited contact with co-

7    workers and no work with the public, and opined that drug and alcohol abuse would be

8    material to any disability determination.  AR at 318-34, 689-705.  For example, Arthur Lewy,

9    Ph.D., opined in January 2009 that plaintiff's drug and alcohol abuse "may result in limitations

10   that meet listing 12[.]09 or preclude sustained constructive activity.  However, considering

11   evidence regarding mental impairments aside from DAA, including relevant opinions from

12   treating and examining sources regarding the primacy of DAA, there is not indication of

13   problems of more than moderate clinical severity with suggestion that responds well to tx in

14   the context of not abusing drugs or alcohol and DAA is considered material."  AR at 701.

15   Thus, Dr. Lewy concluded that "evidence concerning severity [of] mental impairments aside

16   from DAA suggests the presence of mild limits in daily living and moderate limits in social

17   functioning and CPP."  AR at 701.  The ALJ reasonably concluded that the state agency

18   physicians' reports were generally "consistent with Dr. Toews' discussion."  AR at 26.

19       Finally, the ALJ found that Dr. Toews' opinions were also consistent with the findings

20   of examining physician Dr. Collins.  Dr. Collins evaluated plaintiff in December 2008, and

21   concluded that if plaintiff got his alcohol addiction under control, he could perform simple and

22   repetitive tasks, perform work activities on a regular and consistent basis with or without

23   special or additional instructions, maintain regular attendance, complete a normal

24   workday/workweek without interruptions from his psychiatric conditions, and deal with stress

REPORT AND RECOMMENDATION - 21

1    encountered in the competitive workplace.  AR at 686-87.  The ALJ summarized Dr. Collins'

2    consultative psychiatric evaluation in detail, and adopted his conclusion that "without

3    substance abuse, the claimant would be able to manage simple work tasks and interact with co-

4    workers.  This report is given significant weight."  AR at 19-20.

5         Accordingly, plaintiff has failed to show that the ALJ erred by affording Dr. Toews'

6    opinions significant weight, and finding plaintiff's DAA material to the disability

7    determination in this case.  AR at 20, 25.  As discussed above, Dr. Toews' opinions were

8    consistent with other independent evidence in the record, such as the Good Samaritan

9    treatment records of Ms. Hanig, the state agency physicians' reports, and the opinions of

10   examining physician Dr. Collins, which show significant improvement in plaintiff's

11   functioning when he abstains from using drugs or alcohol.

12                    4.      *Other Medical Opinions*

13        Several pages of plaintiff's reply brief are dedicating to defending the organization of

14   his opening brief, which the Commissioner alleges fails to identify most assignments of error

15   with the requisite specificity.  Dkt. 19 at 1-4.  The Court agrees with the Commissioner that

16   plaintiff's opening brief was unhelpfully organized by making broad arguments about the

17   ALJ's conclusion that DAA was material, rather than making specific and clear arguments

18   about the ALJ's evaluation of individual medical opinions.  Nevertheless, the Court has

19   endeavored to decipher each of plaintiff's specific assignments of error.  To the extent the

20   Court may have failed to address any argument by the plaintiff about the medical evidence, the

21   Court finds that plaintiff has failed to present the assignment of error with the requisite level of

22   specificity and therefore waived the argument.  *See generally Carmickle v. Commissioner*, 533

23   F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any

24   specificity) (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir.

REPORT AND RECOMMENDATION - 22

2003) (the court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief")).

        B.      <u>The ALJ Did Not Err in Evaluating the Testimony from "Other Sources"</u>

        1.   *Legal Standard*

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill*, 12 F.3d at 919.

        2.   *Mr. Kabisch*

Plaintiff contends that the ALJ failed to provide germane reasons for rejecting the opinions of Mr. Kabisch and Ms. McGrew. Dkt. 17 at 14. Specifically, plaintiff asserts that "the above-mentioned medical and 'other' evidence indicates that Mr. Bush exhibited significant functional limitations even when he was using little or no alcohol and that he was only able to function in structured, highly supportive environments." *Id*. at 14-15.

REPORT AND RECOMMENDATION - 23

1    The Commissioner contends that, once again, plaintiff "does not identify the specific

2    statements at issue or discuss the ALJ's handling of them beyond asserting she did not provide

3    germane reasons for rejecting them." Dkt. 18 at 17.  In any event, the Commissioner asserts

4    that the ALJ properly evaluated the lay witness statements of Mr. Kabisch, plaintiff's drug and

5    alcohol counselor, who is not an "acceptable medical source."  *Id.*  The Commissioner

6    contends that "the ALJ gave at least one germane reason for discounting Mr. Kabisch's

7    testimony based on evidence Plaintiff was using alcohol during the time Mr. Kabisch worked

8    with him . . . roughly from July 2009 through January 2011."  *Id.* (citing AR at 26).  The ALJ

9    noted that plaintiff was undergoing alcohol and cannabis dependence treatment at American

10   Behavioral Health Systems starting in February 2010, but did not improve because he left

11   treatment against medical advice.  AR at 20, 719-21.  Consistent with the ALJ's finding that

12   plaintiff was abusing alcohol during the time Mr. Kabisch was working with him, plaintiff's

13   American Behavioral Health counselor noted that plaintiff was diagnosed with severe alcohol

14   and cannabis dependence in February 2010.  AR at 20, 26, 719.  Thus, the Commissioner

15   argues that plaintiff could reasonably conclude "that Mr. Kabisch's assessment of Plaintiff's

16   ability was not independent of the effects of alcohol, and that the symptoms he described were

17   consistent with Plaintiff's behaviors when he was using alcohol."  Dkt. 18 at 18 (citing AR at

18   26).

19        The Court agrees with the Commissioner.  The ALJ noted that "both lay witness reports

20   are considered in reaching my conclusions.  Ms. McGrew and Mr. Kabisch said that the

21   claimant still needs help when he is sober."  AR at 26.  The ALJ noted that "Dr. Toews' review

22   of the record does not support the reports from Ms. McGrew and Mr. Kabisch, but their

23   observations are consistent with some of the claimant's behavior when he is using alcohol . . .

24   Their testimony that the claimant is non-functional even when sober is not fully credited."  AR

REPORT AND RECOMMENDATION - 24

at 26.  The ALJ further noted that plaintiff "is only recently sober, by the testimony, although he walked out of treatment.  Thus it is not certain that he has remained sober or that he will not experience improvement with longer-term sobriety."  AR at 26.  In light of the fact that Mr. Kabisch's opinions appear to have been based upon plaintiff's behavior when he was still abusing alcohol, the ALJ could reasonably decline to adopt Mr. Kabisch's opinion about plaintiff's functionality when he was sober.  This was a specific and germane reason for the ALJ to discount Mr. Kabisch's testimony.

　　　　　　　3.　　*Ms. McGrew*

Similarly, the Commissioner argues that the ALJ also gave at least one germane reason for discounting the testimony of plaintiff's sister, Ms. McGrew.  Dkt. 18 at 19.  Specifically, the Commissioner points out that the "ALJ discounted Ms. McGrew's observations of symptoms due to Dr. Toews' opinion that DAA was material to the determination of disability based on his independent consideration of the medical evidence during the time Plaintiff was living with his sister, including the Good Samaritan records discussed above."  *Id.*

The ALJ noted that "Ms. McGrew admitted that she was not with the claimant all of the time because of her job and some of her comments were based on information provided by her husband, who stayed home with the claimant.  Her observations are no doubt credible enough, but the claimant continued to abuse alcohol during the times she mentioned."  AR at 26.  Furthermore, the ALJ noted that "Dr. Toews' review of the record does not support the reports from Ms. McGrew and Mr. Kabisch, but their observations are consistent with some of the claimant's behavior when he is using alcohol."  AR at 26.  Rather, their reports "show that the claimant has some symptoms and limitations, but not to the point of disability.  Other evidence supports that conclusion," including plaintiff's daily activities.  AR at 26.

The ALJ could reasonably reject Ms. McGrew's "testimony that the claimant is non-functional even when sober" because it was inconsistent with the medical evidence in this case. AR at 26. "One [germane] reason for which an ALJ may discount lay witness testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). As discussed in detail above, the ALJ found that the medical evidence in this case, including the opinions of Dr. Toews, established that plaintiff's mental health symptoms significantly improved when he abstained from drinking alcohol and abusing drugs. Thus, the ALJ could afford Dr. Toews' testimony "that the evidence showed the claimant was much better when he stopped substance abuse" greater weight than Ms. McGrew's testimony that he "is non-functional even when sober," especially in light of the fact that "Ms. McGrew admitted that she was not with the claimant all of the time because of her job and some of her comments were based on information provided by her husband[.]" AR at 26. The ALJ did not err.

D.   The ALJ Did Not Err at Steps Four or Five

Plaintiff contends that the ALJ failed to make sufficient findings about his past work at step four to conclude that he was able to return to his past relevant work as a janitor or laborer if he stopped substance abuse. Dkt. 17 at 18 (citing AR at 27). Plaintiff asserts that "it is not even clear that these jobs constituted substantial gainful activity . . . Therefore, she erred in concluding that Mr. Bush could return to these jobs." *Id.* With respect to the ALJ's alternatively finding at step five that plaintiff could perform other jobs existing in significant numbers in the national economy, plaintiff asserts that the ALJ's RFC and hypothetical questions to the vocational expert "did not accurately reflect his actual limitations." *Id.* at 19.

Plaintiff's arguments are unpersuasive. Even if the ALJ erred by concluding that plaintiff could return to his past relevant work at step four, such error would be rendered

1    harmless by the ALJ's alternative finding at step five because it was inconsequential to the

2    ultimate non-disability determination.  An ALJ's erroneous step four determination is harmless

3    error if "the ALJ properly concluded as an alternative at step five that [the claimant] could

4    perform work in the national and regional economies."  *Tommasetti v. Astrue,* 533 F.3d 1035,

5    1044 (9th Cir. 2008).

6          Plaintiff's arguments regarding the ALJ's findings at step five are simply a restatement

7    of his prior assignments of error, which the Court has already rejected.  Plaintiff has not

8    established that his mental impairments remain as limiting as he claims, even in the absence of

9    DAA.  Thus, plaintiff has not shown any error by the ALJ in assessing plaintiff's RFC, or

10   posing his hypothetical question to the vocational expert.  *See Carmickle v. Commissioner,*

11   *Soc. Sec. Admin.*, 533 F.3d 1155, 1164–65 (9th Cir. 2008) (holding that an ALJ's RFC

12   assessment need not include impairments for which the medical records do not establish any

13   work related impairments).  Accordingly, plaintiff has not established any error by the ALJ at

14   steps four or five.

15                        VIII.   CONCLUSION

16         For the foregoing reasons, the Court recommends that the final decision of the

17   Commissioner be AFFIRMED.  A proposed order accompanies this Report and

18   Recommendation.

19         DATED this 13th day of August, 2013.

20

21         _____

22         JAMES P. DONOHUE
           United States Magistrate Judge

23

24

REPORT AND RECOMMENDATION - 27